[Crim. No. 2215.  In Bank.—January 9, 1919.]

In the Matter of the Application of CLARENCE LOCKETT for a Writ of Habeas Corpus.

[Crim. No. 2220.  In Bank.—January 9, 1919.]

In the Matter of the Application of DON A. GONO for a Writ of Habeas Corpus.

CRIMINAL LAW—"FELLATIO" AND "CUNNILINGUS"—UNCONSTITUTIONALITY OF SECTION 288A, PENAL CODE.—Section 288a of the Penal Code which declares the acts technically known as "fellatio" and "cunnilingus" to be felonies is unconstitutional in view of section 24 of article IV of the constitution requiring that all laws shall be published "in no other" than the English language.

ID.—SECTION 288a, PENAL CODE, VOID FOR UNCERTAINTY.—Section 288a of the Penal Code is void for uncertainty, as well as for the reason that it is not expressed in the English language.

ID.—CRIMINAL STATUTES—ESSENTIALS TO VALIDITY.—It is essential to the validity of a statute creating a criminal offense that it show in language capable of being understood by a person of ordinary intelligence what it is that is prohibited. This can only be done by the use of terms or words of settled meaning, or words which indicate offenses well known to and defined by the common law.

APPLICATIONS for Writs of Habeas Corpus originally made to the Supreme Court, directed against the Sheriff of the City and County of San Francisco. Petitioners discharged.

The facts are stated in the opinion of the court.

Edwin V. McKenzie, Harry A. McKenzie, A. S. Newburgh, and Oscar Hudson, for Petitioners.

John H. Riordan, for Respondent.

MELVIN, J.—Both petitioners are held, one under commitment after preliminary examination, and the other after such commitment and the filing of an information. Each is charged with an offense sought to be defined by section 288a of the Penal Code by the use of the word "fellatio." The sole question involved in each petition is whether or not the section is constitutional; therefore, we shall examine and consider both petitions together.

It is contended on behalf of both petitioners that the statute is unconstitutional because it is not in the English language, and because it is so indefinite and uncertain and unintelligible that it fails to inform a person charged thereunder with reasonable precision what acts are intended to be denounced by it and, therefore, denies "due process of law" to anyone prosecuted for its supposed violation.

The constitutionality of the same statute was considered by this court in a proceeding entitled "In the Matter of the Application of William R. Soady for a Writ of Habeas Corpus," a bare majority of the justices holding it to be constitutional. (56 Cal. Dec. 247.) Subsequently, the court of its own motion granted a rehearing, but as the petitioner had meanwhile been tried and acquitted the proceeding became of merely academic interest, and was, therefore, very properly dismissed. In that proceeding the author of this opinion was a dissenter from the views held originally by a majority of the court, and wrote an opinion in which he attempted to set forth his views. As no one concurred in the language of that opinion (although two of the justices reached the same conclusion), the writer of this opinion will take the liberty of

adopting herein some of the same language without the
formality of quotation marks.

The section in question is in the words and figures follow-
ing: "The acts technically known as fellatio and cunnilingus
are hereby declared to be felonies and any person convicted of
the commission of either thereof shall be punished by im-
prisonment in the state prison for not more than fifteen
years."

As published in the Penal Code the statute contains no hint
of its meaning except the two unusual words, with the first
one of which we are here concerned, but as originally enacted
it contained the preliminary recital that it was "An act to
add a new section to the penal code, to be numbered 288a,
relating to sex perversions and defining the same to be
felonies."

This forms the only hint of the purpose of the legislature in
enacting the section, but unless the word "fellatio" itself is
an English word which clearly expresses an exact meaning,
the hint furnished by the title is of little value.

That the legislature, in the exercise of its power to define
crimes and to provide for the punishment of offenses, should
make laws tending to the suppression of sins against decency
is most commendable, and that statutes should be drawn in
language to offend the sensibilities of normal people to as
small a degree as possible is a truth that none should gainsay;
yet so important is the liberty of the individual that it may
not be taken away even from the most debased wretch in the
land, except upon conviction of a crime which has been so
clearly defined that all might know in what act or omission
the violation of the law should consist.   For this reason the
people, through their constitution, have wisely decreed that
all laws, all official writings, shall be preserved and published
in the English language.   It is also true that in construing
statutes courts should readily regard the words from other
languages as being Anglicized and, therefore, as escaping the
constitutional objection, in all cases where they had come into
common use or were easily understood by reference to lexicons
commonly accessible, and that, in the interests of decency,
courts should sanction the use of such words, euphemistically
employed to describe offenses against morality, thus avoiding
the bald nastiness involved in the use of the vernacular, if the
words in the statutes from other languages than our own, bore

clear, definite meanings easily ascertained. This court should do much to uphold the legislature in its efforts to. avoid shocking specifications in the definitions of crimes of indecency. But the faults of the statute before us arise from the circumstances that not only is the word "fellatio" one not found in the English language, but it is not a word having a definite, technical meaning either in law or in psychopathology.

The form of the word "fellatio" would indicate that it is a Latin word intended to denote the act of the "fellator," a word of ancient origin and use derived from the verb "fellare," and applied originally to a child at its mother's breast, but having an acquired meaning as applied to a certain sort of degenerate person. Martial (Marcus Valerius Martialis), who wrote of the debased Romans of the latter part of the first and the early years of the second century (he who insisted that although his verses were sometimes obscene his life was not bad) used the word "fellator" in more than one of his epigrams. For example, in the fifty-ninth epigram of the twelfth book entitled "De Importunis Basiartoribus," in which the poet describes the annoyances to which importunate persons subject a man returning to Rome after a long absence, occurs the line: "Fellatorque, recensque cunnilingus." The seventy-fourth epigram of the fourteenth book is entitled "Corvus" and denies a popular libel upon that bird. The first line is as follows: "Corve salutator, quare fellator haberis?" meaning "O crow, salutor, why are you called fellator?" The epithet "salutator" refers to the legend to the effect that a crow once addressed to Julius Caesar the words "Salve, Imperator!" In the thirtieth epigram of book XI the word occurs in the form "fellatori." The last two lines of the sixty-sixth epigram in book XI, in which the poet expresses surprise that the object of his lines has not accumulated money are as follows:

"Et fellator es, et lanista: miror
"Quare non habeas, Vacerra, nummos."

In book I, epigram 95, is the feminine form of the word in the title "Ad Æglen Fellatricem," and the word "fellatorum" in the ninety-fifth of book XI.

The earliest use of the word "fellatio" which has been called to our attention is in a Latin note to Valpy's edition of Martial published in 1823, where it appears in the ablative "fellatione." It does not occur in any of the English dic-

tionaries in common use. In Harper's Latin Dictionary is found the word "fellator," applied originally to a child at its mother's breast, and having an acquired meaning with reference to a degenerate person. In Lippincott the word "fellator" is defined as "A Latin term for the pathic agent in irrumation." The word "irrumation" as therein defined seems limited to the person upon whom a certain disgusting act is performed rather than the one practicing it. "Fellatio" is used and defined in Stedman's Medical Dictionary and in Dorland's American Illustrated Dictionary (published in 1917, two years after the adoption of section 288a of the Penal Code). In "Studies in the Psychology of Sex," by Havelock Ellis (volume VI, published in 1911), we find the word "fellatio" (pages 555, 557). In both paragraphs in which the word is employed the author seems to be describing an act committed by a woman upon a man. Whether he intended to limit the word to such relation of opposite sexes it is, of course, impossible for us to know. In the volume of the same work published in 1912, the word is again used, not so much to describe the act as some of its consequences (volume V, page 172). In the work known as "Psychopathia Sexualis," by Dr. K. v. Krafft-Ebing, Rebman's translation, edition of 1906, we find at page 504 the word "fellare" defined in Latin as the committing of an act upon a man by a woman.

Clearly "fellatio" is a Latin word, and, unless we can say that it has become Anglicized, the conclusion is unescapable that its use in the statute under review renders that section obnoxious to section 24 of article IV of the constitution of California. When the Matter of Soady was before the court, Mr. Justice Lucien Shaw, in an opinion in which Mr. Justice Victor Shaw concurred, thus expressed the rule and its application to this statute: "When a word from a foreign language has been used in English speech and writing so often that its meaning has become generally understood, it is said to have been Anglicized, and it is then a part of the English language with the meaning it has acquired by such use. But the fact that a foreign word may be found in a medical dictionary, or in any other dictionary of technical words used by one of the learned professions, and that its meaning is there defined, does not establish it as a part of the English language. Such dictionaries define many words which are not in ordinary use and of which none except men of the profession, and not all

of them, know the meaning. Law dictionaries contain a large number of words and phrases from the Latin and French languages and give their meaning. Laws might easily be framed couched entirely in these words. It would not be considered that such a law was valid under our constitution.'' That the word ''fellatio'' has not become Anglicized is so clearly apparent that further comment seems unnecessary.

But it has been suggested that this court is bound to decide that the word is English in view of the presumption that an act of the legislature is constitutional, and that where the existence or nonexistence of a fact or facts is involved in a law the determination of the legislature may not be disturbed unless error clearly appears. One answer to this argument is that the legislature has not found nor declared that the word is English, nor that it has been adopted by common use into the language. The section merely declares that there is an act ''technically known as fellatio.'' To whom so known is not specified. To what technique, art, profession, cult or practice the term belongs is not stated. The mere use of the word does not involve any presumption that the legislature took evidence from which a conclusion was drawn that it was a legitimate English word. On the contrary, the statement of the lawmakers that the act denounced is ''technically'' known as ''fellatio'' would seem to indicate that its meaning was familiar only to the members of the calling or profession using the word. Again, there is no attempt to define the word by the legislature, and this court is charged with the duty of deciding whether or not it conveys any idea by the English language. If the rule for which contention is made were to attach to all language used in statutes, then would the court's duty to construe statutes stand helpless before an impassable wall of presumption. When the legislature uses language in a statute we must interpret it as language. No peculiar sanctity attaches to it because it is language used in a legislative enactment. Ambiguity is not presumed to be intelligibility merely because it attaches to a statute, nor is hopeless obscurity illuminated by the fact that two houses have passed and a busy governor has signed a bill. In short, we may not declare ''fellatio'' Anglicized by presumption.

It has also been suggested that because section 24 of article IV of the constitution succeeded a part of the old constitution which required laws to be published in English and in

Spanish, the mere function of the later provision was to dispense with the publication of statutes in Spanish. This contention is not tenable. With reference to the meaning of section 24 of article IV of California's constitution, it seems to me that, no matter what its origin and irrespective of the fact that it took the place of a former regulation for the publication of laws in two languages, it unmistakably requires that laws shall be published "in *no other*" than the English language. I care not what may be its origin. I am bound by its unambiguous terms. It means that English—understandable English—is to be used in the declaration of laws by the legislature, and that failure to employ that language vitiates a statute. The constitutions of other states that have never required publication of laws in a foreign language contain, or have contained, provisions similar to ours. In Illinois the language is just as emphatic as that used in our constitution, which prescribes publication "in no other than the English language." (Const. of Illinois, 1818, sec. 18, Schedule; Const. of Illinois, 1870, sec. 18, Schedule.) The constitution of Kansas of 1857 contained the following provision (section 3, article XV) : "The laws . . . and the written, judicial, and legislative proceedings of the State, shall be conducted, promulgated, and preserved in the English language." This has been omitted from later constitutions. In Michigan there have been two constitutional provisions similar to ours. "The laws, public records, and the written judicial and legislative proceedings of the State shall be conducted, promulgated and preserved in the English language." (Const. of Michigan, 1850, sec. 6, art. XVIII; Const. of Michigan, 1908, sec. 6, art. XVI.) The mere fact that our constitutional provision on this subject historically follows a former requirement for publication of laws in Spanish does not alter in the slightest degree its plain meaning.

Nor is it surprising that no authority has been called to our attention whereby any law has been declared unconstitutional because not expressed in the English language. The absence of such authority would seem to indicate that the constitutional direction to legislate for English speaking constituencies in the English language had been generally obeyed. Authority may be found, however, for the rejection of pleadings not drawn in English when the statutes prescribe that language, and surely the constitutional requirement that

English and *no other* language may be used in our laws
should receive a construction at least as strict as that applied
to such statutes. In *State* v. *Town of Jericho,* 40 Vt. 121,
[94 Am. Dec. 387], it was held that a demurrer should have
been sustained to an indictment in which signs instead of
words were used to describe degrees and minutes. In New
Jersey it was held that a statute requiring a physician to de-
liver his account "in plain English words" was violated by
the use of contractions, initials, and symbols in a medical
man's bill of particulars. (*Hedges* v. *Boyle,* 7 N. J. L. 68.)
In *People* v. *Ah Sum,* 92 Cal. 648, [28 Pac. 680], the court
examined an information by which it was sought to charge the
defendant with perjury committed at his trial for selling
lottery tickets. In the information, the lottery ticket regard-
ing which it was alleged Ah Sum had falsely testified, was set
out in the Chinese language. The court held that this viti-
ated the pleading, not only because of the violation of section
950 of the Penal Code, but also for the reason that the use of
the Chinese language in an essential part of the information
was contrary to section 24 of article IV of the constitution.
If a pleading fails because a vital part of the charge is ex-
pressed in a foreign language, what saves an enactment simi-
larly tainted? The very same section of the constitution re-
quires *both* to be in English.

In line with the authorities last cited, and also supporting
the contention of petitioners that the statute is not under-
standable, is a very recent decision. In the case of *People* v.
*Carrell,* 31 Cal. App. 793, [161 Pac. 995], which this court
refused to transfer from the district court of appeal, after
decision, that court was considering the sufficiency of an in-
formation charging a defendant in the language of section
288a of the Penal Code. While the question before the court
in that case was purely one of pleading not involving the con-
stitutionality of the statute, nevertheless the discussion in the
opinion by Mr. Presiding Justice Chipman is of great value
in considering the matter now before this court. His lan-
guage was, in part, as follows:

"Unexplained, the word 'fellatio' would, to a man of com-
mon understanding (indeed, we think also to one of uncom-
mon understanding), be as cabalistic as if written in Egyp-
tian or Mexican hieroglyphics or in Japanese or Chinese
characters. The attorney for the defendants says in his

brief: 'The defendant entered into the trial of this case, and so did his attorney, without any knowledge of what the word *"fellatio"* would be defined to mean as used in the statute, or what the elements constituting the offense might be, but rather supposed' the court would instruct in accordance with a definition the attorney found in Andrew's Latin-English Lexicon. In this sense the definition might not meet the act proven, but would seem to apply to the woman rather than the man. This is mentioned to emphasize the soundness of the statutory rule that the offense must be so stated as to be intelligible to a person of common understanding. Under no other rule could a defendant safely go to trial. The circumstance is mentioned also for the reason that it is by no means certain what acts the legislature intended to characterize as the crime of *fellatio*. We do not find it spoken of in any work on criminal law, and its introduction into our statutes is of so recent a date that the courts have not been called upon to deal with it so far as we are aware until this case arose.

"The exigencies of the case do not seem to require that we should stain the pages of our reports with the definition as given, or to enlighten the profession or the public as to what the learned trial judge found it necessary to inform the jury the legislature meant when it announced *'fellatio'* as a felony."

This language has been solemnly approved by the supreme court because a petition for transfer of the cause to this court for decision has been denied. The case is still authority. It has never been reversed nor criticised. Thus this court has decided that a pleading in the language of the statute is insufficient because "it is by no means certain what acts the legislature intended to characterize as the crime of *'fellatio.'*" The mandate of the constitution regarding the use of *no other than the English language* not only applies to statutes and to all "official writings" and "judicial proceedings" (which I believe would include pleadings), but such command is expressed *in the same section and the same sentence.* Evidently, the framers of the constitution intended that English speaking people should understand, or should at least be in a position to learn, not only the meaning of indictments against individuals, but the significance and purport of general laws having application to everybody. We say to the man in custody, "You cannot understand the word embodying the

charge against you; therefore, the indictment fails." But to the people of the state and to every one of them, if we held this law to be constitutional, this court, in effect, would say: "You are bound to understand the same unintelligible word, although it is the very essence of the statute without which section 288a of the Penal Code could mean absolutely nothing in any language." I cannot assume a position so antagonistic to reason.

From an examination of the text-books and lexicons containing the word "fellatio" or kindred words, we find that these so-called "authorities" are by no means in accord nor consistent in their definitions. In Stedman's Medical Dictionary there is a contradiction in definitions which throws the whole matter into confusion so far as that work is concerned. In that book "fellator" is defined as "one who takes the buccal part in fellatorism." This is thoroughly in accord with the meaning evidently implied in Martial's writings. But "fellatio" is by Stedman given as a synonym for "fellatorism," which in turn is described as a synonym for "irrumation," and that word, defined by reference to its underlying verb "irrumare," seems to apply to the passive and not to the active agent in a perverted practice. As defined in the ninth edition of Dorland "fellatio" relates only to the conduct of the active agent. The definition is unmistakable. Indeed, it is so bluntly expressed that it may not with propriety be here quoted. But strangely enough "fellatorism" is defined as a practice relating to the person *upon whom* another performs a certain act. Krafft-Ebing, as we have seen, limits the practice to a woman as the active agent, and Havelock Ellis seems to follow the same definition, as does also Andrew, as Mr. Justice Chipman in his opinion in the case of *People* v. *Carrell,* 31 Cal. App. 793, [161 Pac. 995], has stated. With the books in confusion so hopeless we cannot say that the word has a definite technical meaning. It seems to me that without arrogating to ourselves the function of legislation we cannot definitely declare what the statute means, and that even if we could bring ourselves thus to go outside of our constitutional duty, we would be compelled to choose among conflicting definitions. Section 288a of the Penal Code is void for uncertainty as well as for the reason that it is not expressed in the English language.

It is not necessary to examine at length the other Latin word of the statute, because it is not used in the commitments of the petitioners now before this court. It may be said in passing that "cunnilingus" is found but not clearly defined (doubtless for reasons of modesty) in Lewis and Short's revision of Harper's Latin Dictionary, the lexicographers contenting themselves by giving the meaning of one of the words from which it is derived. The word as employed by Martial does not denote an *act* as its use in the statute would imply. but an *individual*. For example, the epigram in book IV of Martial, numbered 43, ends with the line:

"Dixi te, Coracine, cunnilingum," meaning

"I have called you, Coracinus, 'a cunnilingus.'"

This definition is accepted by Dorland, who uses the word "cunnilinguist" to denote the person guilty of a certain act of perversion, but gives *"Cunnilingus"* as the Latin synonym. Krafft-Ebing seems to use "cunnilingus" as meaning an act. while apparently the same act is described by Ellis as "cunnilinctus." While this part of the statute is not under review in the present proceedings, I think it proper to indicate that in my opinion it is also void.

The statute under which the petitioners were prosecuted was in violation of both the letter and the reason of the constitutional provisions invoked by them.

The prisoners are discharged.

VICTOR E. SHAW, J., *pro tem.*, Concurring.—I concur in the judgment. The crime denounced by the statute is not defined but designated by words concededly not found in or constituting any part of the English language in which, as provided by section 24, article IV, of the constitution, all laws of the state must be published and *in no other*. Not only is it obnoxious to this provision of the constitution, but the words, no doubt intended by the legislature to apply to some one of the many forms of sexual perversion, are, even when reference is had to Latin Lexicons, of no determinate signification in determining the particular act which is penalized. This being true, the legislature might with equal propriety have used Chinese characters, or, indeed, have coined new words for use in prescribing the act in place of those adopted, which, in the absence of definition, would have been just as

intelligible to the citizen as the words used for the purpose of defining the offense.

ANGELLOTTI, C. J., Concurring.—I concur in the judgment. Further consideration has satisfied me that section 288a of the Penal Code is so vague and uncertain in its attempted statement of the acts declared to be felonies that it may not fairly be upheld as a valid statute. It must be conceded, I think, that it is essential to the validity of a statute creating a criminal offense that it show in language capable of being understood by a person of ordinary intelligence what it is that is prohibited. This, it has been said, can only be done by the use of terms or words of settled meaning, or words which indicate offenses well known to and defined by the common law. (See, generally, 16 Corpus Juris, pp. 67, 68.)

Sloss, J., and Richards, J., *pro tem.*, concurred.

Wilbur, J., dissented.