[Crim. No. 3233.   First Dist., Div. One.   Oct. 31, 1956.]

THE PEOPLE, Appellant, v. ROBERT GIANI, Respondent.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy

Attorney General, and William O. Weissich, District Attorney (Marin), for Appellant.

Paul I. Archbold for Respondent.

WOOD (Fred B.), J.—Charged with the violation of section 288a of the Penal Code, upon the person of a 15-year-old boy, defendant took the witness stand and denied the charge. Upon cross-examination the district attorney was allowed, over objection, to ask, "On May 23d of this year [the date of the alleged occurrence] were you a homosexual?" The answer was, "Yes." Assigning this as prejudicial error defendant made and the trial court granted a motion for a new trial, predicated upon Penal Code, section 1181, subdivision 5. The state has appealed under sanction of section 1238, subdivision 3. The order must be affirmed.

Appellant invokes the principle that, although a defendant in a criminal action cannot be compelled to be a witness against himself, "if he offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief." (Pen. Code, § 1323.) This defendant was not examined in chief as to his sexual make-up, whether homosexual or heterosexual. True, says the appellant, but this "does not mean that the cross-examination must be confined to a mere categorical review of the matters, dates or times mentioned in the direct examination" and that a defendant " 'can be cross-examined with respect to facts or denials which are necessarily implied from the testimony in chief, as well as with respect to facts which he expressly states.' " (*People* v. *Zerillo*, 36 Cal.2d 222, 228 and 229 [223 P.2d 223].)

It is difficult to see the relation between defendant's affirmations and denials on the witness stand and the information which the question "were you a homosexual" might elicit. Appellant speaks of homosexuality as "a psychobiological condition which predisposes, indeed compels, a party to commit an abnormal sexual offense," such as the offense proscribed by section 288a. Appellant has not cited any expert medical testimony to that effect. It has suggested that we refresh the judicial recollection by reading one or more of a series of Sexual Deviation Research Reports of studies officially conducted by the State Department of Mental

Hygiene acting through the Superintendent (Karl M. Bowman, M.D.) of the Langley Porter Clinic.* We have perused those reports but find nothing therein which seems to support counsel's broad claim that *every* homosexual is predisposed to commit crimes, sexual crimes, crimes of the nature of the crime defined and proscribed by section 288a. Instead, we find such statements as these: "The facts are that the majority of homosexuals are no particular menace to society. A small number of them, like those who are heterosexual, will attempt to seduce or sexually assault others or try to initiate sex relations with small children." (1951 Report; mimeographed, p. 7.) "[M]ost exhibitionists, homosexuals and peepers may fit into the class of psychopaths and yet be socially harmless individuals." (January, 1953, Report, p. 109.) Evidence does not "exist for the popular idea 'that homo-

---

*The California Sexual Deviation Research project came about as the result of certain studies conducted by the Subcommittee on Sex Crimes of the Assembly Interim Committee on Judicial System and Judicial Process. The subcommittee issued three significant reports: One in March, 1950, another in January, 1951, and the third in August, 1952.

The subcommittee's preliminary report appears in the Assembly Journal for the 1950 First Ext. Session at pages 29-299. It was also printed as a separate document. It was followed by a final report printed in the Assembly Journal for the 1951 Regular Session at pp. 2799-2866, as a part of the report of the main committee which appears in the 1951 Journal at pages 2701-2866. The main committee's 1951 report was also printed as a separate document, the subcommittee report appearing at pages 103-170 thereof. The August, 1952 report of the subcommittee (newly created but virtually a continuation of the original subcommittee) appears in the Assembly Journal for the 1952 Second Ext. Session at pages 135-193.

The statute which sanctioned and directed the conduct of this research work was chapter 35 of the Statutes for the 1950 First Ext. Session, page 477; codified in 1953 as sections 5650-5653 of the Welfare and Institutions Code. (Stats. 1953, ch. 153, p. 1028.)

The following reports have been filed by the State Department of Mental Hygiene acting through the Langley Porter Clinic, Karl M. Bowman, M. D., Medical Superintendent:

Preliminary report stating the problem and describing the proposed project (55 pages mimeographed) was received by the Assembly on March 12, 1951. (Assembly Journal for the 1951 Regular Session, page 1461.)

Sexual Deviation Research Report by Karl M. Bowman, March 1952, was printed as a separate document and in the Assembly Journal for the 1952 First Ext. Session at pages 37-113.

California Sexual Deviation Research Report, dated January, 1953, was received by the Assembly on February 24, 1953, (Assembly Journal for the 1953 Reg. Sess., p. 1156) and was ordered printed as a separate document (Same, p. 1197).

California Sexual Deviation Research Report, dated March, 1954, was printed as a separate document. It was received by the Assembly on March 2 and on March 3, 1954, was ordered printed. (Assembly Journal, 1954 Reg. Sess, pp. 64 and 74.)

sexuals are in general antisocial individuals.' '' (January, 1953, Report, p. 117.)

Moreover, it is not required that the defendant, in support of his objection to the challenged question, demonstrate that not every homosexual is psychobiologically predisposed, indeed compelled, to commit the act here charged. It is for the cross-examiner to show a sound basis for his assumption that homosexuals are so predisposed. The probable lack of a scientific basis for any such assumption seems indicated by the following statement made at the conclusion of the state's four-year sexual deviation study: ''Up to now much research in sexual deviation has been theoretic and speculative rather than empiric, and most of the empiric research has been clinical and descriptive rather than experimental. It is suggested that an important task is that of developing and applying reliable scientific procedures in the effort to discover basic principles in the area of human sexuality. This difficult task involves searching systematically and empirically for the components of personality, of culture, of interpersonal relationships, of heredity, and constitution that contribute to sexual deviation and to sexual conformity.'' (March, 1954, Report, p. 157.)

In this state of the record we perceive no sound basis for entertaining a presumption or an inference that every homosexual is ''psycho-biologically'' predisposed to perform the acts proscribed by section 288a of the Penal Code.

We are mindful of Edmund Burke's classic utterance in his Second Speech on Conciliation with America: ''I do not know the method of drawing up an indictment against a whole people.'' (The Works of the Right Honorable Edmund Burke, vol. II, p. 136, 3d edition, Boston: Little, Brown & Company, 1869.) Equally true, we think, would be the statement ''You can not indict an entire segment of the population.'' Yet, that, it would seem, is precisely what the challenged question does. Perhaps we could express it more clearly were we to assume the charge to be that of rape, ''accomplished with a female not the wife of the perpetrator'' (Pen. Code, § 261), and that the prosecutor asked the defendant upon cross-examination ''Are you a heterosexual?'' the contention being that every heterosexual is of a ''psycho-biological'' make-up which ''predisposes, indeed compels,'' him to commit rape.*

---

*We note in passing that the acts proscribed by section 288a are equally condemned whether committed by persons of the same sex or of

Appellant's counsel frankly states he has found no case law precisely in point supporting appellant's claim. He does invoke the well established principle that " 'All facts having a rational probative value are admissible, unless some specific rule forbids.'. . . The general test of relevancy of indirect evidence is whether it tends logically, naturally, and by reasonable inference to prove or disprove a material issue'' (*People* v. *Jones,* 42 Cal.2d 219, 222 [266 P.2d 38]), and the application of that principle to the facts in the Jones case (prosecution of a charge of violating section 288 of the Penal Code). An order denying defendant's motion for a new trial was reversed, for error in holding inadmissible the testimony of a psychiatrist that he had examined the defendant 'and concluded he " 'is not a sexual deviate and . . . is incapable of having the necessary intent to be lustive, either for himself or to satisfy the lusts of a child of nine and a half years of age.' '' (P. 222 of 42 Cal.2d.) His "sole purpose in offering in evidence the doctor's opinion . . . was to prove that he did not engage in the acts for which he was on trial,'' not to disprove the existence of the required specific intent. (P. 223.) The reviewing court then adverted to the use of evidence of good character tending to rebut testimony of an incriminating character, showing defendant's general reputation in the community, creating a reasonable doubt of guilt. Next, reference was made to the statutes dealing with the sexual psychopath, indicating a legislative determination that a person who commits sex offenses "is more likely to violate section 288 than one who has no such propensity; to some extent there is a cause and effect relationship. Evidence that a person has no such disposition is analogous to that in regard to character, for it bears upon the probability of the innocence of the accused. From evidence which tends to prove that a person is not a sexual psychopath, an inference reasonably may be drawn that he did not commit the act denounced by section 288. (See Code Civ. Proc., § 1960.) The competency of expert opinion in this field of evidence is established by the statutory procedure for the determination of sexual psycho-

opposite sexes. (*People* v. *Coleman,* 53 Cal.App.2d 18, 26-27 [127 P.2d 309], and cases there cited.)

Appellant's argument, pressed to a logical conclusion, would seem to tend toward the view that if the information herein charged defendant with violating section 288a in participation with a person of the opposite sex (adult or minor, consenting or nonconsenting) it would be proper for the cross-examiner to ask ''Are you a heterosexual'' upon the theory that such a person is predisposed to commit such an act.

pathy (Welf. & Inst. Code, §§ 5504-5506). Accordingly, the evidence here excluded was relevant to the general issue before the jury and should have been admitted." (Pp. 224-225.)

■ Quite significant, we think, is the fact that the court was there speaking of an offer to prove by expert testimony that a particular individual had no disposition to commit the offense charged, not merely that he was a member of a large class of persons as a basis for a layman's inference (not a medical expert's opinion) that all members of that class were predisposed to commit the act charged. Also, insofar as the court did refer to a class it was a conceivably narrower class (sexual psychopaths) than the one to which appellant herein refers (homosexuals). The Legislature has not, in so many words at least, declared that every homosexual is a sexual psychopath. Instead, it has defined the latter term as meaning a person "who is affected, *in a form predisposing to the commission of sexual offenses,* and *in a degree constituting him a menace to the health or safety of others,* with any of the following conditions: (a) Mental disease or disorder. (b) Psychopathic personality. (c) Marked departures from normal mentality." (Welf. & Inst. Code, § 5500; emphasis added.) Conceivably a person might be affected by one or another of the conditions described in clauses (a), (b) and (c) but not "in a form" predisposing him to commit sexual offenses, nor "in a degree" constituting him a menace to the health or safety of others. ■ In the absence of expert medical testimony on the subject we hesitate to equate the word "homosexual" with the term "sexual psychopath."

We note the court's criticism (in the Jones case) of the holding in *People* v. *Sellers,* 103 Cal.App.2d 830 [230 P.2d 398], the rejection of a defendant's offer of the opinion of a medical expert, who had examined him, whether the defendant was to any extent a homosexual. Concerning that, the court in the Jones case observed in part, that "a showing of sexual normality . . . has relevancy to the nonperformance of homosexual acts." (P. 225 of 42 Cal.2d.) That statement, viewed in its context, was made concerning an offer by the defendant to show *in*disposition to commit the offense, by proving he was not a homosexual (conceivably viewed as a large group which *includes* a smaller group defined as sexual psychopaths). If so, the relevancy of the offer was obvious. The converse is not necessarily true; i. e., the concept that

if a man merely belongs to the larger group (homosexual) he is predisposed to commit the particular offense.

It seems pertinent also to observe that even if the fact designed to be proved by the expected answer to the question "were you a homosexual" were equally relevant to an issue herein as was the proffered testimony in the Jones and Sellers cases relevant to issues in those cases, respectively, there is this significant difference: In the Jones case and in the Sellers case the defendant was making the offer. He thereby waived the protection of any exclusionary rule the law may have imposed for his benefit. Here, in contrast, the prosecution made the offer and the defendant objected.

In view of the conclusion we have reached, it is unnecessary to enter upon an extended discussion of the exclusionary rules of evidence and the exceptions thereto. We do note that the challenged question is not designed or adapted to elicit proof of "similar acts" committed upon the person of the prosecuting witness or any one else, whether to show propensity, a behavior pattern or a modus operandi.

We observe, also, that "no particular purpose, motive or intent is a necessary element of the crime described" by section 288a of the Penal Code (*People* v. *Avanzi,* 25 Cal. App.2d 301, 302 [77 P.2d 237]; quoted with approval in *People* v. *Coleman,* 53 Cal.App.2d 18, 27 [127 P.2d 309].)

Evidence of other similar crimes is not ordinarily admissible to prove specific intent unless "the intent accompanying the act is equivocal, or where it is claimed by the defendant that the act was the result of mistake, accident, or inadvertence, or where intent is otherwise denied." (*People* v. *Channell,* 136 Cal.App.2d 99, 112 [288 P.2d 326].) No greater should be the reason for receiving evidence of a personality trait or quality that might predispose a person to commit the proscribed act. That seems to have been the view of the court in *People* v. *Musumeci,* 133 Cal.App.2d 354 [284 P.2d 168], where (in a prosecution under section 288 of the Penal Code) it was held prejudicial error to allow (upon cross-examination of the defendant) the question " 'You are a sex pervert, aren't you?' " (P. 360.) The discussion at pages 361 to 366, Presiding Justice White speaking for the court, is cogently persuasive.

We entertain no doubt that the error herein was prejudicial. "In a case such as this where the crime charged is of itself sufficient to inflame the mind of the average person [a prosecution for violations of sections 288 and 288a, Penal Code],

it is required that there be rigorous insistence upon observance of the rules of the admission of evidence and conduct of the trial." (*People* v. *Evans*, 39 Cal.2d 242, 251 [246 P.2d 636].)

The order is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied November 15, 1956, and appellant's petition for a hearing by the Supreme Court was denied November 28, 1956. Traynor, J., and Spence, J., were of the opinion that the petition should be granted.