[Crim. No. 142.   Fifth Dist.   June 3, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND ROSS, Defendant and Appellant.

James F. Thaxter, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Ronald W. Tochterman, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—Raymond Ross appeals from judgment of conviction on two counts of an information charging forceable rape and violation of section 288 of the Penal Code. He was accused by a 13-year-old girl of the commission of these offenses near the City of Modesto. The defendant was sentenced on each count to imprisonment for the term provided by law, the sentences to run concurrently.

Loretta Pearson testified that shortly before 6 p.m. on August 3, 1964, with the permission of her mother, she went with Ray (as she called him) Ross in her mother's automobile, ostensibly to the Modesto bus station to permit him to buy a ticket to Los Angeles. Instead, he drove down highway 99 toward Ceres, turned off toward Carpenter Road, passed the dog pound, and then drove onto a dirt road; there he stopped the car, moved toward her, touched her on the breasts and in the vicinity of her private parts, saying, "Your brothers did this and this to you before." He then started unbuttoning her pedal pushers; she began screaming, and tried to open the door of the automobile. The defendant grabbed for her neck and said that if she didn't "shut up" he was going to kill her. She did succeed in getting the door open, but it did not stay open. He ripped her pedal pushers, succeeded in removing a leg from her clothing, and her underclothes, and engaged in an act of intercourse with her. The struggle and the commission of the offense took some 20 or 30 minutes, according to her testimony; she said she tried to choke him and also to stab him with a pair of scissors but without success. After the completion of the act, Loretta got out of the car, adjusted her clothing, and then reentered the car; she did not try to run away, and passing automobiles on the highway were too far away to permit her to engage their attention. The complaining witness said that the defendant then drove to a store where he bought safety pins and two ice cream

cones; she used the safety pins to pin up her clothing, but she stated that she did not eat the ice cream. The defendant drove the car to her mother's home where she got out and found that her mother had gone to a nearby park. She remained in the house until Mrs. Pearson arrived with her other children. In the presence of Raymond Ross, she began to tell what happened, and Ross said, "Loretta tell your mother the truth." When she stated what had occurred, Mrs. Pearson slapped Ross and the defendant grabbed for the mother's neck. One of the boys in the family was told by his mother to call the police, which he did. After hearing this fact, defendant angrily threw his cap onto the floor and then picked it up and left in Mrs. Pearson's automobile.

On cross-examination, Loretta testified that the defendant had never bothered her sexually before, but she admitted that he had whipped her prior to this event as punishment for not bringing in the family clothes for her mother from the clothes line. She further testified that the defendant had spent the night before in the Pearson home where Loretta lived with her mother and brothers and sisters. She admitted that when he stopped at the store to buy the pins and ice cream there were other people around, but that she was not then crying or screaming, and that she did not get out of the car or mention the incident to anyone.

Dr. Robert W. Clark examined the girl at the emergency clinic at the Stanislaus County Hospital at about 7:30 p.m. on August 3, 1964; he testified that she had had sexual intercourse sometime within an eight-hour period before the examination. There was no external evidence of assault on her body except for a small bruise on the right side of her neck.

Dorothy Pearson, her mother, testified that Loretta was 13 years of age on May 7, 1964; Mrs. Pearson admitted that the defendant had lived with her as man and wife for two months in Los Angeles in 1962, and a month in Montana in 1960, that Raymond Ross calls her his wife, that they have a child, and that defendant was very good to her and to her children.

Detective Sergeant Garvin testified, over the objection of the defense attorney, that he had talked with the defendant on August 6, 1964, at the sheriff's office when defendant was in custody after he had been booked for the alleged offense, that defendant was not advised of his right to remain silent nor of his right to have counsel present during the interview by the police; the defendant talked freely and voluntarily;

he told the witness that he had not been in Modesto between July 29 and August 5, 1964, but was in Fairfield and Suisun on August 3, 1964, where he saw and talked with several named people. On the next day, Garvin went to the Fairfield area and made contact with all but one of the persons named by the defendant; several were called as witnesses at the trial; the attempt to establish an alibi evidently failed as shown by the verdict of the jury.

Appellant urges the following grounds for reversal:

1) Erroneous admission of defendant's alibi statement;

2) Errors in the instructions; and

3) Double punishment imposed for what was essentially one crime.

■■■ Appellant contends that it was not proper to use as evidence the statement made to Sergeant Garvin because of the principles enunciated in *Massiah* v. *United States,* 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246] ; *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The statement was not a confession or an admission of any factor which supplied a necessary element of the crime. It consisted of a flat denial that he was present at the locus of the crime. He said he was not in Stanislaus County at all, and, if this were true, the inference would follow that he could not possibly have been guilty of the charges. However, the appellant points out that if a claimed alibi is shown to be false, a jury is apt to consider that this fact indicates a guilty knowledge of the commission of the crime by the defendant. (*People* v. *Cole,* 141 Cal. 88, 90 [74 P. 547] ; *People* v. *Miller,* 185 Cal.App.2d 59, 70-71 [8 Cal.Rptr. 91] ; Witkin, Cal. Evidence (1958) § 240, pp. 273-274; *People* v. *Underwood,* 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937].)

From the practical standpoint, it is quite true that, if a jury rejects alibi evidence as false, their tendency is to take the uncontradicted testimony of a complaining witness as establishing the truth.

The defendant should have been advised preliminarily of his right to remain silent and that he could have an attorney of his choice present at his interview by the police. ■■■ And as held in *People* v. *Hillery,* 62 Cal.2d 692, 711 [44 Cal. Rptr. 30, 401 P.2d 382], it is error to produce evidence of a statement to the police if this preliminary precaution for the rights of a defendant has not been observed.

However, as stated in *People* v. *Dorado, supra,* 62 Cal.2d

338, 356: ". . . under some circumstances the introduction into evidence of statements obtained from a defendant during police interrogation in violation of his right to counsel and his right to remain silent may constitute harmless error, . . ."

█ And *People* v. *Finn,* 232 Cal.App.2d 422, 428 [42 Cal.Rptr. 704], correctly points out: "It seems to us that when a statement is something less than an admission of an essential element of the crime or a fact necessary to establish the defendant's guilt, it must be viewed in the light "of all of the circumstances surrounding the trial to determine whether its use in evidence constituted reversible error."

█ In this case, we conclude that the use of the claim of alibi made by the defendant did not constitute reversible error. The statement itself was freely and voluntarily given, the police official so testified, and the court correctly instructed the jury that they were to disregard it entirely if it were not free and voluntary; there is no intimation that pressure was exerted by the police officials, or that any threats or promises were made, or that physical harm was inflicted. The statement was purely exculpatory. It should be noted, also, that the existence of the alibi was the principal defense in the case itself, and that the defendant's own testimony and that of two other witnesses called by him tended to prove that defense, which, if it had been correct, would have been a complete answer to the state's accusations. The assertions made to the police were identical with the defense urged before the jury. And the evidence of guilt, as found by the jury, was strongly convincing, and, in fact, uncontradicted, aside from the claim of alibi.

The contention made by defendant is met decisively by the opinion in *People* v. *Hillery, supra,* 62 Cal.2d 692, 711-713, in which statements made by the defendant and constituting in effect an alibi were held to be erroneous, because the defendant had not been informed of his rights by the police officials, but that the admission of the statements was not prejudicially erroneous. In the majority opinion, the court says: "The trial court committed error in admitting the statements. Nothing in the record indicates that the police informed defendant of his rights to counsel and to remain silent or that he otherwise waived those rights. The police obtained the statements during the accusatory stage since, at the time defendant uttered them, he was under arrest and the police were engaged in a process of interrogations that lent itself to eliciting incriminating

statements. (See *People* v. *Stewart* (1965) *ante,* p. 571 [43 Cal.Rptr. 201, 400 P.2d 97].) Consequently the admission of these statements at the trial constituted error under *Escobedo* v. *Illinois, supra,* and *People* v. *Dorado, supra.*

"The statements, however, did not constitute a confession, deemed to be prejudicial per se (*People* v. *Dorado* (1965) *supra,* at pp. 356-357) ; we therefore examine the record to determine if the introduction of the statements caused prejudice to defendant under article VI, section 4½ of the California Constitution. We do not believe such prejudice occurred.

"Defendant did not, during the interrogations, confess or admit any connection with the crime; indeed, the substance of the introduced statements, if believed by the jury, would have exonerated him from guilt. Defendant stated that he did not know any members of the victim's family and that he did not enter the victim's home or molest the girl. Although he stated that the quarter boots introduced into evidence were his, he denied that Fritz Crawford had repaired them. He stated that the gloves found in the weeds where the car had been observed were not his; he denied purchasing black redlined gloves from Correll Hicks and denied that he knew Hicks. He admitted that he owned a belt which he used to hold up his hip boots but denied that the belt found near the gloves belonged to him. He denied parking his car in Tome Lane on March 21, 1962, or at any other time.

"Moreover, the substance of defendant's statements during the interrogation with reference to his activities and whereabouts on the evening of March 21, 1962, was not only exculpatory but also virtually identical with defendant's explanation at trial. Almost every aspect of defendant's alibi was disproved by clear and abundant independent evidence. Any inconsistencies between defendant's testimony and his prior statements were therefore of minor import when viewed in light of the other overwhelming evidence of guilt. Since there is no reasonable probability that the jury would have reached a result more favorable to defendant if the statements had been excluded, we conclude that the judgment as to guilt must be affirmed. (Cal. Const., art. VI, § 4½; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)" (See also *People* v. *Ulibarri,* 232 Cal.App.2d 51, 55-56 [42 Cal. Rptr. 409] ; *People* v. *Campbell,* 232 Cal.App.2d 712, 714-715 43 Cal.Rptr. 71].)

In our opinion, there is "no reasonable probability that the jury would have reached a result more favorable to the defend-

ant'' if his alibi statement had never been made, or had been excluded.

An objection is urged to the giving of an instruction relative to flight (CALJIC Instruction No. 36) ; it is as follows: ''The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt, and the significance to be attached to such a circumstance, are matters for your determination.''

The court further advised the jury: ''The Court has endeavored to give you instructions embodying all rules of law that may become necessary in guiding you to a just and lawful verdict. The applicability of some of these instructions will depend upon the conclusions you reach as to what the facts are. As to any such instruction, the fact that it has been given must not be taken as indicating an opinion of the Court that the instruction will be necessary or as to what the facts are. If an instruction applies only to a state of facts which you find does not exist, you will disregard the instruction.''

There was evidence from which the jury could conclude that there was flight on the part of the defendant. After he took the girl to her home and she made a statement to her mother of what had happened, and one of the boys of the family had been sent to call the police, the defendant left in a hurry in the mother's car after throwing his cap to the floor in evident exasperation. It could be inferred from this evidence that the defendant did engage in flight, and the instructions clearly left it to the jury to determine whether he did or did not do so. The instruction was not erroneous.

It is also contended that the court committed error in failing to instruct the jury on the question of statutory rape as an included offense. The uncontradicted testimony of the victim was that the rape was accomplished by force and violence and accompanied by threats of the defendant. Depending upon the character of the evidence as to whether consent was given, a trial involving a charge of the rape of a minor by force and violence should normally be accompanied by instructions that the jury might bring in a verdict of guilty of the lesser crime of statutory rape. (*People* v. *Blythe,* 224 Cal.App.2d 348 [36 Cal.Rptr. 606] ; *People* v. *Brown,* 131 Cal.App.2d 643 [281 P.2d 319].) But, when the circumstances

show that if defendant is guilty at all he is necessarily guilty of the greater crime, the court should refuse to instruct relative to an included offense, even if requested to do so. (*People* v. *McCoy,* 25 Cal.2d 177, 187 [153 P.2d 315]; *People* v. *Watson,* 173 Cal.App.2d 440, 445 [343 P.2d 323]; *People* v. *Bryan,* 190 Cal.App.2d 781, 787 [12 Cal.Rptr. 361].) ■ Here, the appellant may not properly complain of the failure of the court to instruct on an included offense as he made no request for such an instruction. (*People* v. *Calderon,* 155 Cal.App.2d 526, 530 [318 P.2d 498]; *People* v. *Walker,* 155 Cal.App.2d 273, 275 [318 P.2d 77].)

■ Lastly, it is contended by the appellant that there should not be convictions of two offenses in that the acts constituting both crimes were so closely connected in their nature and in the time of their occurrence as to be, in effect, identical. (*People* v. *Greer,* 30 Cal.2d 589 [184 P.2d 512].) We believe that the point is well taken. While in *People* v. *Slobodion,* 31 Cal.2d 555, 563, convictions of two sexual offenses closely connected in time were upheld, it seems to us that the principles discussed in the *Greer, supra,* case require the elimination of one of the offenses in that they were both essentially united because of their nature and the time of their commission, and that it would be contrary to section 654 of the Penal Code to hold the defendant responsible for both, as separate crimes. The rape of a child under 14 years of age also violates section 288 of the Penal Code; here there was evidence in addition that the defendant momentarily touched the breasts and private parts of the complaining witness immediately before the rape. The evidence was such as to lead to the necessary conclusion that the whole series of acts constituted only a single manifestation of the illicit torsion of the defendant's reproductive instinct.

The judgment is reversed insofar as it imposes a concurrent sentence for the offense constituting a breach of section 288 of the Penal Code; the judgment of conviction is otherwise affirmed.

Brown (R.M.), J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 28, 1965.