[Crim. No. 15179.   Second Dist., Div. One.   Feb. 5, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. CURLEE
TOWNSEND, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of
Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James,
Assistant Attorney General, and Jerold A. Prod, Deputy
Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of convic-
tion of burglary.

In an information filed in Los Angeles on November 22,
1967, William Robert Clark and Curlee Townsend were
jointly charged with burglarizing a Safeway Store on October
31, 1967. Each of the defendants in a jury trial was found to
be guilty of burglary in the second degree. Townsend, the

appellant herein, was sentenced to the state prison and a timely notice of appeal was filed by him.

A résumé of some of the facts is as follows: Frederick Mersch, an assistant manager of a Safeway Store in Pacoima, closed the place of business at about 11 p.m. on October 30, 1967. No one was given permission to enter and remove any item from the store until the same was to be readied for business the day following. Kenneth Porter, the store manager, received a telephone call about midnight of October 30th with reference to the store and he went to the establishment where he was met by the police. The north door of the store had been broken and the glass was shattered. Porter entered the store and observed that the top of the cigarette rack was empty and a portion of the meat counter also was empty. He saw meat and cigarettes belonging to the store in two shopping carts outside the store.

At about 12:45 a.m. Officers Dorion and Kennedy received a call because of a silent burglar alarm installed at the Safeway Store. The officers went to the store and stopped the police car about 10 yards from the corner of the building. Officer Dorion saw defendant Clark running from the building toward and past the police car, with cigarette cartons in his arms. Dorion ordered Clark to stop. Clark continued running and Dorion pursued him and caught him in a yard a short distance away. Dorion later recovered the cartons of cigarettes which Clark had dropped during the attempted runaway. The officers wheeled shopping carts containing meat and cigarettes back into the building. At about this time they noted that a door had been broken; Dorion entered the market and during a search thereof noted Townsend, the appellant therein, lying on the floor in the approximate center of the market. Townsend was arrested.

In the officer's testimony with reference to Townsend he stated that Townsend "was just laying there. He wasn't doing anything." Further, that as the officer recalled it Townsend "was on his stomach." that he at first "appeared to be" prone as though he were sleeping; the officer then saw Townsend move and although he did not "know if he [Townsend] was sleeping or not" he then searched Townsend and found no products of the store in his possession. The officer further stated that it appeared that Townsend "had been drinking." That it appeared that he (Townsend) was under the influence of alcohol at that time, that Townsend's speech was slurred and he (the officer) thought that Townsend's

eyes appeared watery but that upon being told to get up Townsend had obeyed the instruction without assistance. The officer stated that the men appeared to be not of such condition that he would have arrested either of them for being drunk but that they "had been drinking heavily."

The appellant testified in effect that he had started to drink a certain brand of wine about 11 a.m. of October 30th and continued drinking wine all day long and throughout the evening and night just prior to the arrest. There is difficulty encountered in reading the record as to just how many bottles of wine were consumed by Townsend before the event in question but suffice it to say the number seemingly was rather large. Townsend also testified that he knew of the store and its location but he could not remember being in the store, that the last thing he recalled was when he was talking to a lady friend and going to get another bottle of wine.

■ At the trial, at the request of the prosecution, the court gave among others, two instructions.[1]

Appellant now asserts that under the circumstances it was proper to give the first set-forth instruction but that its effect was nullified by the giving of the second instruction. We are inclined to agree with appellant.

Respondent agrees "that the giving of the incorrect instruction is error and is not cured by the giving of the correct instruction." (*People* v. *Spencer,* 60 Cal.2d 64, 86-87 [31 Cal. Rptr. 782, 383 P.2d 134] ; *People* v. *Ford,* 60 Cal.2d 772, 796-797 [36 Cal.Rptr. 620, 388 P.2d 892] ; *People* v. *Deatherage,* 249 Cal.App.2d 363, 368 [57 Cal.Rptr. 501] ; *People* v. *Dabney,* 260 Cal.App.2d 786, 788-789 [67 Cal.Rptr. 455] ; *People* v. *Graves,* 263 Cal.App.2d 719, 727-729 [70 Cal.Rptr. 509].)

---

[1]Instruction No. 78B (Revised):

"In the crime of Burglary of which the defendant is accused [in count I of the information], a necessary element is the existence in the mind of the defendant of the specific intent to Enter and Steal property.

"If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such specific intent."

Instruction No. 78 (Revised):

"Our law provides that 'no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition.'

"This means that drunkenness, if the evidence shows that the defendant was in such a condition when allegedly he committed the crime charged, is not of itself a defense in this case. It may throw light on the occurrence and aid you in determining what took place, but when a person in a state of intoxication, voluntarily produced by himself, commits a crime such as that charged against the defendant in this case, the law does not permit him to use his own vice as a shelter against the normal legal consequences of his conduct."

The court in *Ford, supra,* at pages 795-797 said: *"Erroneous Instructions on Intoxication.* Defendant contends that the instructions given on the subject of intoxication were prejudicially erroneous. The point is well taken. The court first gave an instruction materially identical with CALJIC No. 78. As we recently observed in *People* v. *Spencer* (1963) *supra, ante,* pp. 63, 85, the giving of such an instruction 'could well leave a jury in a state of confusion or even with the impression that as a matter of law a defendant's voluntary intoxication can have no effect on the criminality of his conduct. The subject instruction is intended to be, and should be used only where the crime charged does not require specific intent.' In the circumstances of this case proof of a 'wilful, deliberate and premeditated' intent to kill was essential to support a conviction of first degree murder (Pen. Code, § 189). It was therefore error to give the subject instruction, and for the same reason it was error to give a further instruction phrased in terms of former CALJIC No. 319.

''The People concede that the court erred in giving the foregoing two instructions on intoxication, but assert that no prejudice ensued. The record does not support this assertion.''

The evidence of Townsend's intoxication was at the least ample to require the giving of correct instructions on the subject. The officer stated that Townsend ''had been drinking,'' that he appeared to be under the influence of alcohol at the time, that his speech was slurred, that he had ''been drinking heavily'' but that he was not so drunk that the officer would have arrested him for being drunk. As indicated in *Spencer, supra,* at page 87, trial jurors should not be required to make such an intricate analysis as is required to make the two instructions harmonize—that under the circumstances the jury could well be in a state of confusion.

Respondent contends that the error here was negligible and that no prejudice appears, that the ''evidence of intoxication at the time of the commission of the offense was slight'' and that the jury ''most likely'' disbelieved the evidence of intoxication.

We are not prepared to hold that the giving of the improper instruction under question was not prejudicial.

The judgment is reversed.

Wood, P. J., and Thompson, J., concurred.