[Crim. No. 7230. First Dist., Div. One. Dec. 23, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN RAYMOND CLINE, Defendant and Appellant.

## COUNSEL

Frances L. Hancock, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—Defendant has appealed from a judgment of conviction entered upon jury verdicts which found him guilty of lewd and lascivious conduct in violation of Penal Code section 288, of sex perversion in violation of section 288a, and of unauthorized entry of property in violation of section 602.5 (a lesser but necessarily included offense of the burglary in violation of section 459 which had been charged in the indictment). Following proceedings under the provisions now found in sections 6300-6330 (formerly §§ 5500-5522) of the Welfare and Institutions Code, in which defendant was found not to be a mentally disordered sex offender, he was sentenced to concurrent terms in the state prison for each of the first two offenses, and to county jail for an unspecified term for the third offense.[1]

Defendant contends it was reversible error for the court to convict and punish him twice for the commission of a single act, and that he was denied his constitutional right to the effective assistance of counsel, because his attorney failed to object to the multiple sentences imposed by the trial court, and failed to raise the defense of diminished capacity. It is concluded that the conviction of violation of section 288a should be reversed, and that the judgment should otherwise be affirmed.

*Divisibility of the course of action*

Section 654 of the Penal Code provides that "An act or omission which

---

[1]Under the provisions of section 19 of the Penal Code a violation of section 650.5 may be punished by imprisonment in the county jail not exceeding six months. By virtue of the provisions of section 669 of the Penal Code any sentence to county jail not expressly made consecutive would be concurrent with his prison sentence. (*In re Patton* (1964) 225 Cal.App.2d 83, 87-90 [36 Cal.Rptr 864]; and see *In re Fluery* (1967) 67 Cal.2d 600, 603 [63 Cal.Rptr. 298, 432 P.2d 986].) Any sentence for this offense under the commitment dated March 14, 1968, would have long since expired. It is, therefore, unnecessary to determine whether the unauthorized entry was with the intent, motive or objective of engaging in the criminal conduct which in fact ensued. (Cf. *People* v. *Hooper* (1967) 250 Cal.App.2d 118, 121-122 [58 Cal.Rptr. 100].)

is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ." The Supreme Court of this state has recently recognized that more than one theory has developed in the application of these provisions. The majority opinion in *In re Hayes* (1969) 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430] states: "The key to application of section 654 is in the phrase 'act or omission': a defendant may be punished only once for each distinct 'act or omission' committed. There have been numerous attempts in the cases to define a single 'act,' with varying degrees of clarity. Section 654 has been held to apply, for example, where the multiple violations are 'necessarily included offenses' (*People* v. *Knowles* (1950) 35 Cal.2d 175, 186 . . .) and where there is a single 'intent and objective' underlying a course of criminal conduct (*Neal* v. *State of California* (1960) *supra,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839]) but not where there are multiple victims (*id.*). Most of the cases construing section 654 can be resolved by application of one or the other of these theories." (70 Cal.2d pp. 605-606, and see also Traynor, C. J., dissenting at p. 616, fn. 6.)

The conclusion in *Hayes* does not illuminate the problem presented by this case. There the majority stated, "In summation, then, section 654 of the Penal Code proscribes multiple punishment for a single 'act or omission which is made punishable' by different statutes, i.e., a single *criminal* act or omission. Since the mere act of driving is made punishable by no statute, it is not the type of act or omission referred to in section 654. The acts 'made punishable' which this petitioner committed were (1) driving with a suspended license and (2) driving while intoxicated, two separate and distinct criminal acts; that they were committed simultaneously and that they share in common the neutral noncriminal act of driving does not render petitioner's punishment for both crimes in conflict with Penal Code section 654." (*Id.,* at p. 611.) In this case the common intent and objective of the actor were not neutral, but were the intent and objective to gratify his lust, passion, and sexual desires in a manner proscribed by the provisions of sections 288 and 288a[2] of the Penal Code. The question here is

---

[2]The sufficiency of the evidence to establish oral copulation within the provisions of section 288a has not been questioned. It is noted that the section as originally enacted (Stats. 1915, ch. 586, § 1, p. 1022) referred to "fellatio" and "cunnilingus" (see Black's Law Dictionary (4th ed.1951) pp. 456 and 743). Those provisions were held to violate former section 24 of article IV of the California Constitution which required all laws to be published in the English language. (*In re Lockett* (1919) 179 Cal. 581, 582-588 [178 P. 134]; and see *People* v. *Carrell* (1916) 31 Cal.App. 793, 794 [161 P. 995].) In 1921 the section was amended to read as at present and its

whether there has been an "oversubtle division of the evidence of acts and intents" resulting in a "split into a series of discrete crimes proscribed by different statutes directed against basically the same kind of criminality." (*Id.* dissent, at p. 616, fn. 6.) The precedents are not clear.

One line of cases emphasizing the intent and objective of the actor, have uniformly struck down multiple punishment by application of the following formula, "Whether a course of criminal conduct is divisible and consequently gives rise to more than one act within the meaning of section 654 of the Penal Code is determined by the intent and objective of the actor. [Citation.]" (*People* v. *Diaz* (1967) 66 Cal.2d 801, 807 [58 Cal.Rptr. 729, 427 P.2d 505] [assault with a deadly weapon and an act in violation of section 288a found incident to same objective as burglary]; *In re McGrew* (1967) 66 Cal.2d 685, 688 [58 Cal.Rptr. 561, 427 P.2d 161] [violation of section 261, subdivision (4) and 288a found incident to same objective as burglary]; *In re Ward* (1966) 64 Cal.2d 672, 676 [51 Cal.Rptr. 272, 414 P.2d 400] [robbery incident to same objective as kidnaping for robbery]; *People* v. *Failla* (1966) 64 Cal.2d 560, 570 [51 Cal.Rptr. 103, 414 P.2d 39] [sexual misconduct included within kidnaping for that objective]; *People* v. *Hicks* (1965) 63 Cal.2d 764, 765 [48 Cal.Rptr. 139, 408 P.2d 747] [burglary included within same objective as three separate sex offenses— two violations of section 288a and one violation of section 286—for which defendant sentenced to consecutive sentences]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839] [arson included in same objective as attempted murder]; *People* v. *Greer* (1947) 30 Cal.2d 589, 602-604 [184 P.2d 512] [statutory rape section 261, subdivision (1) included under provisions of section 288]; *People* v. *Toliver* (1969) 270 Cal.App.2d 492, 497 [75 Cal.Rptr. 819] [*idem*]; *People* v. *Paxton* (1967) 255 Cal.App.2d 62, 72 and 73-74 [62 Cal.Rptr. 770] [section 288a included in objective of kidnaping, section 207 (?)]; *People* v. *Gomez* (1967) 252 Cal.App.2d 844, 860 [60 Cal.Rptr. 881] [robbery included in same objective as kidnaping for robbery]; *People* v. *Hooper* (1967) 250 Cal.App.2d 118, 121-122 [58 Cal.Rptr. 100] [violations of sections 278

constitutionality was upheld. (*People* v. *Parsons* (1927) 82 Cal.App. 17, 19 [255 P. 212].) It was at first suggested that the word copulation should be given a literal meaning. In *People* v. *Angier* (1941) 44 Cal.App.2d 417 [112 P.2d 659], the court ruled, "A mere kiss or lick of the private organ, even though lewdly done (Pen. Code, sec. 288), is not copulation." (44 Cal.App.2d 419.) This view was repudiated by the author of that opinion, and reframed as follows: "A person is guilty of violating the statute when he has placed his mouth upon the genital organ of another." (*People* v. *Harris* (1951) 108 Cal.App.2d 84, 88 [238 P.2d 158]. See also *People* v. *Hunter* (1958) 158 Cal.App.2d 500, 505 [322 P.2d 942]; *People* v. *Massey* (1955) 137 Cal.App.2d 623, 625 [290 P.2d 906]; and 1 Witkin, Cal. Crimes (1963) §§ 543-544, pp. 495-496.)

and 288 included within objective of burglary]; *People* v. *Lindsey* (1967) 249 Cal.App.2d 6, 10-12 [57 Cal.Rptr. 190] [violation of section 288, includes section 288a where based on same act]; *People* v. *Ross* (1965) 234 Cal.App.2d 758, 766 [44 Cal.Rptr. 722] [forcible rape section 261, subdivision 3 includes violation of section 288]; *People* v. *Gay* (1964) 230 Cal.App.2d 102, 105 [40 Cal.Rptr. 778] [burglary includes sex offenses which were its objective]; and *People* v. *Webb* (1958) 158 Cal.App.2d 537, 540-543 [323 P.2d 141] [violation of section 288 includes section 288a where based on same act].)

On the other hand, it is generally recognized that where several prohibited sex offenses are separate and distinct acts, the defendant can be punished separately for each offense. (*People* v. *Hicks, supra,* 63 Cal.2d 764, 766 [§§ 286 and 288a]; *People* v. *Slobodion* (1948) 31 Cal.2d 555, 561-563 [191 P.2d 1] [§§ 288 and 288a]; *People* v. *Greer* (1947) 30 Cal.2d 589, 600 [184 P.2d 512] [dictum]; *People* v. *Armstrong* (1968) 268 Cal.App.2d 324, 326-327 [§§ 261, subd. 3 and 288a]; *People* v. *Paxton, supra,* 255 Cal.App.2d 62, 72-73 [§§ 261, subd. 3 and 288a]; *People* v. *Gomez, supra,* 252 Cal.App.2d 844, 860 [§§ 268 and 288a]; *People* v. *Gay, supra,* 230 Cal.App.2d 102, 105 [dictum]; *People* v. *Loignon* (1958) 160 Cal.App.2d 412, 420 [325 P.2d 541] [§§ 288 and 288a]; and *People* v. *Akers* (1956) 143 Cal.App.2d 224, 227-228 [299 P.2d 398].[§§ 288 and 288a].)

This case does not involve the situation where multiple punishment is prohibited for a substantive crime which is committed in execution of an inchoate purpose which is an element of more seriously punishable criminal act. (See Traynor, C. J., dissenting, *In re Hayes, supra,* 70 Cal.2d at p. 616, fn. 6, last par.) The determination must depend upon the divisibility of the conduct.

In *People* v. *Greer, supra,* the court observed, "The divisibility of acts in cases involving sex offenses is not easily susceptible of exact definition. The cases show no uniformity in this field, and there are many instances of artificial distinctions. The rule can be set down for the guidance of the trial court in the present case, however, that if the touching of the prosecutrix's body charged in the first information was essentially such touching as would be considered a part of the rape itself, it could not serve as a basis for a separate conviction. If, on the other hand, it was clearly not a part of the rape, but a part of a separate course of conduct, it could be held a separate offense. This rule follows from the doctrine that no person shall be convicted of both an included and a greater offense; otherwise that

doctrine might be subverted by a technical fragmentation of acts having no realistic basis in common experience." (30 Cal.2d at pp. 600-601.)

The record in this case reveals the following: The victim was born January 5, 1961. She was a month shy of 7 years old at the time of the incident, and a little over five weeks past her seventh birthday when she testified. She was in the first grade at school. She testified that the defendant entered the house of a neighbor where she had been left by her mother, and carried her from the living room into a bedroom; that he took off her panties; that he unzipped his pants, took his thing (indicating the location of the male penis) out, and got on top of her; that he kissed her on the buttocks and in the front in the general area of her private parts—where she went to the bathroom—and touched her with his hands at the same place.

The householder's 8-year old son, who was in the third grade in school testified that the defendant picked up the victim and carried her to the bed, took off her underwear, and was kissing her "on the front thing" and in the back; that he then took down his zipper, took out "his front thing" and covered it with the bedspread.

The bedspread was taken into custody and a test disclosed the presence of seminal stains.

An examination of the facts in those cases which have sustained multiple conviction and punishment under sections 288 and 288a reveals that they may be distinguished on grounds enunciated in *People* v. *Webb, supra,* as follows: "The attorney general also relies upon *People* v. *Slobodion, supra,* in which convictions of violating both section 288 and section 288a were sustained. The facts in that case showed that the defendant committed four separate acts upon the body of the prosecutrix, all within a short period of time. Two of these acts violated section 288a (although also punishable under section 288) and, the other two acts constituted a violation or attempted violation of section 261, subdivision 1 although these also were punishable under section 288). Thus, even though all the acts were committed within a relatively short time, Slobodion was properly convicted of violating both section 288 and section 288a since he had committed acts separately denounced in two code sections independent of section 288. The case has no application to the case at bar because here defendant committed but one unlawful act. While this act was punishable under either section 288 or section 288a, it was not punishable under both." (158 Cal.App.2d at pp. 542-543.)

In *People* v. *Akers, supra,* the facts as related by the court sustain its conclusion that "It is clear that the evidence shows certain acts denounced by section 288 of the Penal Code were committed independent of the acts

denounced by section 288a, which acts would not be necessarily or normally associated with each other." (143 Cal.App.2d at p. 228.) In *People* v. *Loignon, supra,* the court followed *Slobodion* and *Akers* on evidence which it epitomized as follows: "Finally, on this appeal, defendant contends that the evidence is insufficient to sustain his conviction of violating sections 288 and 288a. The simple answer to this contention is that Stanley testified to acts which show a clear violation of both sections, and the trial judge believed his story." (160 Cal.App.2d at p. 421.)

 There is no such clarity in the evidence in the instant case. It *appears that the defendant engaged in a course of lewd and lascivious* osculation upon the body of the victim for the gratification of his own sexual desires. Although osculation of the genital organ of another may be equated with copulation under the laws of this state (see fn. 2 above), the conduct described by the children in this case does not rise to the dignity of a separate act or offense. As noted in *People* v. *Ross, supra,* "The evidence was such as to lead to the necessary conclusion that the whole series of acts constituted only a single manifestation of the illicit torsion of the defendant's reproductive instinct." (234 Cal.App.2d at p. 766.) To attempt to separate the defendant's conduct into separate acts on the basis of the meager testimony in this case would be a "technical fragmentation" inconsistent with the policy enunciated in section 654 of the Penal Code. (See *People* v. *Greer, supra,* 30 Cal.2d at p. 589; and Traynor, C. J., dissenting, *In re Hayes, supra,* 70 Cal.2d at p. 616, fn. 6, third par.)

 It is concluded that the case is governed by the following passage in *People* v. *Webb, supra,* "When the victim is a child under the age of 14, an act of sexual perversion is expressly made punishable in different ways [fn. omitted] and by different provisions of the code—namely, sections 288 and 288a. Therefore, a conviction for violation of one of these sections bars a concomitant conviction for violation of the other when both convictions are based upon the same act. (See *People* v. *Slobodion,* 31 Cal.2d 555, 561-562 . . .) The defendant's act under such circumstances may be punished either as sex perversion or as lewd and lascivious conduct, but not as both. (See *People* v. *Greer, supra,* p. 603.)" (158 Cal.App.2d at p. 541. See also *People* v. *Lindsay, supra,* 249 Cal.App.2d 6, 10-12.)

In *People* v. *Webb, supra,* the court reversed the conviction, not merely the sentence: (158 Cal.App.2d at p. 543.) It is generally stated, "If multiple punishment has been erroneously imposed, the appropriate procedure on appeal is to eliminate the effect of the judgment as to the lesser offense or offenses insofar as the penalty alone is concerned. [Citation.]" (*People* v. *Diaz, supra,* 66 Cal.2d 801, 807; *In re McGrew,*

*supra,* 66 Cal.2d 685, 688; *In re Ward, supra,* 64 Cal.2d 672, 675-676; *People* v. *Hicks, supra,* 63 Cal.2d 764, 765-766; *Neal* v. *State of California, supra,* 55 Cal.2d 11, 19; *People* v. *Paxton, supra,* 255 Cal.App.2d 62, 72; and *People* v. *Gay, supra,* 230 Cal.App.2d 102, 105.)

On the other hand, if the defendant commits only a single indivisible act for which the defendant can only be punished once, the conviction of the lesser offense should be set aside. (See *People* v. *Knowles* (1950) 35 Cal.2d 175, 189 [217 P.2d 1]; *People* v. *Greer, supra,* 30 Cal.2d 589, 604; *People* v. *Toliver, supra,* 270 Cal.App.2d 492, 498; *People* v. *Pater* (1968) 267 Cal.App.2d 921, 926 [73 Cal.Rptr. 823]; *People* v. *Webb, supra,* 158 Cal.App.2d 537, 543; but cf. *People* v. *Lindsey, supra,* 249 Cal.App.2d at p. 12; and *People* v. *Ross, supra,* 234 Cal.App.2d at p. 766.) In *People* v. *Pater, supra,* the court reviewed the precedents (267 Cal.App.2d at pp. 924-926) and concluded: "When a multiple punishment is involved under facts which *do not* encompass necessarily included offenses a *conviction* may stand although the *punishment* must be expunged. [Citation.] But, as we have shown, when a necessarily included offense is involved, *the conviction also must be reversed.*" (*Id.* at p. 926.)

■ Where, as here, there is only involved one series of associated acts with a child under 14, the violation of section 288a is included in the violation of section 288. (*People* v. *Lindsey, supra,* 249 Cal.App.2d 6, 11; *People* v. *Webb, supra,* 158 Cal.App.2d 537, 541; and *People* v. *Adams* (1935) 7 Cal.App.2d 743, 746-747 [47 P.2d 320].) The conviction, as well as the sentence, must be reversed.

The parties have agreed that on the record of this case, the judgment of conviction of section 288 is the more serious offense, because the judgment does not incorporate the aggravating circumstances referred to in section 288a. (See *In re McGrew, supra,* 66 Cal.2d 685, 689, fn. 3.) Violation of section 288 is a felony punishable by imprisonment in the state prison for a term of one year to life. Violation of section 288a is a felony punishable by imprisonment in the state prison for not exceeding 15 years, or, may be a misdemeanor, if punished by imprisonment in the county jail not to exceed one year.[3] The conviction of violation of section 288a must be reversed.

---

[3]Section 288a further provides: ". . . whenever any person is found guilty of the offense specified herein, and it is charged and admitted or found to be true that he is more than 10 years older than his coparticipant in such an act, which coparticipant is under the age of 14, . . . he shall be punished by imprisonment in the state prison for not less than three years." It has been assumed that the maximum for the aggravated offense remains at 15 years. (See *In re McGrew* (1967) 66 Cal.2d 685, 689

*Adequacy of representation*

■ "It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled. [Citations.]" (*People* v. *Ibarra* (1963) 60 .Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]. Accord: *In re Williams* (1969) 1 Cal.3d 168, 175 [81 Cal.Rptr. 784, 460 P. 2d 984]; *People* v. *McDowell* (1968) 69 Cal.2d 737, 746 [73 Cal.Rptr. 1, 447 P.2d 97]; and *People* v. *Welborn* (1967) 257 Cal.App.2d 513, 518-519 [65 Cal.Rptr. 8].)

Defendant first contends that his counsel should have raised the question of multiple punishment in the lower court. In both *Ibarra* and *Williams* the record affirmatively revealed that trial counsel was unfamiliar with the rule of law involved—the right of a defendant to challenge the legality of a search and seizure even though he denies possession of that which was seized and any proprietary interest in the premises that were entered (60 Cal.2d at p. 465); and the rule that the provisions of former section 484a of the Penal Code precluded a prosecution under section 470 for forgery where a credit card was involved, as enunciated in *People* v. *Swann* (1963) 213 Cal.App.2d 447, 449 [28 Cal.Rptr. 830] (1 Cal.3d at pp. 173 and 177).

In the present case there is no indication, other than from the result, that defendant's counsel was ignorant of the general principles governing multiple punishment. The converse rules laid down in *People* v. *Greer, supra,* 30 Cal.2d 589 and *People* v. *Slobodion, supra,* 31 Cal.2d 555 and their respective progeny, as reviewed above, did not clearly indicate that there was either multiple conviction or multiple punishment. ■ The alleged omission of counsel should be viewed in the light of the following test, which was· approved in *In re Williams, supra,* "In considering the effectiveness of counsel at the pleading stage, we should not judge attorneys by the harsh light of hindsight, but we must determine whether the appointed counsel at the time was 'reasonably likely to render, *and* [was] *rendering,* reasonably effective assistance.' (*MacKenna* v. *Ellis* (5th Cir. 1960) 280 F.2d 592, 599, modified 289 F.2d 928, cert. den. (1961) 368 U.S. 877 [7 L.Ed.2d 78, 82 S.Ct. 121].)" (1 Cal.3d at p. 176, fn. omitted.)

[58 Cal.Rptr. 561, 427 P.2d 161]; ·*People* v. *Hicks* (1965) 63 Cal.2d 764, 766 [48 Cal.Rptr. 139, 408 P.2d 747]; *People* v. *Lindsey* (1967) 249 Cal.App.2d 6, 11 [57 Cal.Rptr. 190]; and *People* v. *Webb* (1958) 158 Cal.App.2d 537, 543 [323 P.2d 141].) The Attorney General's concession, based on the form of the commitment, makes it unnecessary to determine whether the provisions of section 671 of the Penal Code would increase the maximum for the aggravated offense to life imprisonment, and thereby render it the more grievous punishment because of the higher minimum.

In any event, the correction of the judgment in these proceedings prevents any prejudice from the alleged inadequacy of representation on this point.

Defendant further asserts that his counsel failed to raise the defense of diminished capacity to negate the specific intent necessary for a conviction of violation of section 288 of the Penal Code. (See *People* v. *McDowell, supra,* 69 Cal.2d 737, 746-747; *People* v. *Welborn, supra,* 257 Cal.App.2d 513, 521.)

A neighbor who was summoned by other children testified that she encountered the defendant with his pants open and his zipper down outside the door of the premises where the offense occurred. She testified that he looked drunk, that his eyes were very large and funny, and he looked at her with his eyes wide open. About six hours later when he was arrested, the defendant had an odor of alcohol on his breath, but he was not staggering and his speech was coherent. In the opinion of the arresting officer he was not intoxicated or under the influence. After the defendant was advised of the charges and further cautioned with respect to his legal rights, he acknowledged that he had been to the premises where the offenses occurred to inquire about some property allegedly taken from his mother's house by the children, and he recalled seeing, and named the particular children there. He stated he left immediately when he found the parents were not home.

Defendant first complains that the cross-examination of the neighbor was inadequate. The witness had already testified that in her opinion the defendant was drunk. The tactical decision to rest on the testimony as given rather than to risk impeaching it by further questions may demonstrate acumen rather than incompetency. The alleged failure to further cross-examine the officer, and adverse witness, is also beyond attack. ■ "In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel. [Citations.]" (*People* v. *Brooks* (1966) 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383]. Accord: *People* v. *Hill* (1969) 70 Cal.2d 678, 689 [76 Cal.Rptr. 225, 452 P.2d 329].)

■ The offense proscribed by section 288 requires proof of the specific intent included in the terms of the statute. (*People* v. *Jones* (1954) 42 Cal. 2d 219, 223 [266 P.2d 38]; *People* v. *Piccionelli* (1959) 175 Cal.App.2d 391, 393 [346 P.2d 542]; *People* v. *Perkins* (1957) 147 Cal.App.2d 793, 797 [305 P.2d 932]; *People* v. *Booth* (1952) 111 Cal.App.2d 106, 108

[243 P.2d 872].) The jurors were properly instructed concerning the elements necessary to sustain a conviction for violation of section 288, particularly with respect to the necessity of finding the specific intent required by the statute. (See CALJIC, Instructions No. 27-A (New) and No. 71.11 (New).) They were also correctly instructed, as requested by defendant, on the effect of intoxication on the defendant's state of mind with respect to the requisite specific intent. (See CALJIC, Instruction No. 78-B.)

The court also gave instructions concerning burglary, including the specific intent necessary for that offense, and covering violation of section 288a. The court instructed that voluntary intoxication would not be a defense to the charge of violation of section 288a. (See CALJIC, Instruction No. 78 (Rev.); and *People* v. *Giani* (1956) 145 Cal.App.2d 539, 546 [302 P.2d 813].) It was careful to distinguish between that offense, and those charged in the other two counts which did require a specific intent, and the jurors were reminded to consider the defendant's alleged intoxication with respect to those charges. The confusion condemned in cases where both instructions have been given in connection with one offense (see *People* v. *Townsend* (1969) 269 Cal.App.2d 430, 433-434 [74 Cal.Rptr. 758]; and *People* v. *Booth, supra,* 111 Cal.App.2d 106, 108-109), was avoided in this case. (See *People* v. *Asher* (1969) 273 Cal.App. 2d 876, 901-903 [78 Cal.Rptr. 885].)

It may also be noted that evidence of intoxication to the extent that it diminishes defendant's capacity was very weak. The defendant did not take the stand and testify with respect to his mental state, nor did he offer other witnesses to his physical condition on the day in question. His admissions indicated that he was cognizant of his whereabouts and the identity of those around him at the time the alleged offenses were committed. (See *People* v. *Bandhauer* (1967) 66 Cal.2d 524, 528 [58 Cal.Rptr. 332, 426 P.2d 900].) A review of the record reveals that defendant received more than adequate representation by competent counsel who did the best he could in the face of damaging evidence, and successfully avoided a conviction of burglary. (See *People* v. *Honea* (1967) 257 Cal.App.2d 259, 262-264 [64 Cal.Rptr. 628]; and *People* v. *Ferguson* (1967) 255 Cal.App. 2d 493, 496 [63 Cal.Rptr. 93].)

The judgment of conviction of violation of section 288a of the Penal

Code is reversed. The judgments of conviction of violations of section 288 and of section 602.5 of the Penal Code are affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 18, 1970.